IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Vincent H. Deal, | ) |
|       Movant | ) |
| v. | ) Miscellaneous 06-00021 (HHK) |
| UNITED STATES GOVERNMENT PRINTING OFFICE, | ) |
|       Respondent. | ) |

**RESPONDENT'S OPPOSITION TO MOVANT'S "MOTION FOR ORDER PURSUANT TO CUSTOMER CHALLENGE PROVISIONS OF THE RIGHT TO FINANCIAL PRIVACY ACT OF 1978" AND SUPPORT OF ENFORCEMENT OF ADMINISTRATIVE SUBPOENA PURSUANT TO 12 U.S.C. § 3410(c)**

The United States Government Printing Office ("GPO"), by and through its undersigned counsel, herein opposes the Movant's *Motion for Order Pursuant to Customer Challenge Provisions of the Right to Financial Privacy Act of 1978*, 12 U.S.C. §§3401, et seq. ("RFPA") and requests that the Court, consistent with 12 U.S.C. § 3410(c), order enforcement of the administrative subpoenas at issue in this proceeding.

**I.      PROCEDURAL HISTORY**

The subpoenas giving rise to the Movants' filing were issued to American Express Corporation ("American Express") and Chevy Chase Bank ("Chevy Chase") by the GPO's Office of Inspector General ("OIG") under cover letter dated January 12, 2006, in connection with an official investigation being conducted by that Office. See Declaration of Special Agent Sonja L. Scott, ¶ 4 (attached hereto). Copies of the subpoenas, customer notices, and forms required by the RFPA were mailed to Movant on the same date. Id. ¶ 5. The Movant subsequently challenged the OIG administrative subpoenas *duces tecum*

1

pursuant to the RFPA, 12 U.S.C. §3410.[1] The Movants' Certificate of Service provides that a copy of the Motion to Challenge was sent to the GPO OIG on January 24, 2006. The Motion for Order Pursuant to Customer Challenge was received by the GPO OIG on February 8, 2006. Scott Decl. ¶ 10. The Movant's Motion was filed with this Court on January 24, 2006.

## II.   STATEMENT OF FACTS

On January 12, 2005, the GPO OIG issued subpoenas *duces tecum* to American Express and Chevy Chase in relation to accounts held by Vincent Deal and Andre Alsop pursuant to an official OIG investigation. See Scott Decl. ¶ 4. The subpoenas sought information relating to account information, transactions, and other related banking statements for Deal, Investors Real Estate, and Andre Alsop. Id.

The underlying investigation was opened by the GPO OIG in response to an allegation of Federal Employment Compensation Act ("FECA") fraud by Andre Alsop, an associate of Vincent Deal. Scott Decl. ¶ 6. Mr. Deal is the owner of Investors Real Estate formerly known as Deal Real Estate. Scott Decl. ¶ 7. Upon information and belief, Deal hired Alsop in 1990 while both were employed by the GPO. Id. It is alleged that Deal continued to employ Alsop subsequent to an alleged

---

[1] The statute at 12 U.S.C. § 3410(a) states, in part,

> Within ten days of service or within fourteen days of mailing of a [subpoena], summons, or formal written request, a customer may file a motion to quash an administrative summons or judicial [subpoena], or an application to enjoin a Government authority from obtaining financial records pursuant to a formal written request, with copies served upon the Government authority. A motion to quash a judicial [subpoena] shall be filed in the court which issued the [subpoena]. A motion to quash an administrative summons or an application to enjoin a Government authority from obtaining records pursuant to a formal written request shall be filed in the appropriate United States district court. Such motion or application shall contain an affidavit or sworn statement -
>
>> (1) stating that the applicant is a customer of the financial institution from which financial records pertaining to him have been sought; and
>> (2) stating the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this chapter.

2

workers compensation injury sustained at GPO in 1998. Id. During the investigation, it was determined that Alsop applied to become a Notary Public on September 1, 2001 and identified an office location as 1400 Mercantile Lane, Suite 130, Upper Marlboro, Maryland 20774, which is the site of Investors Real Estate. Id. Alsop also holds a real estate license in the state of Maryland (#598359) which he renewed January 25, 2005. The license reflects he is associated with Investors Real Estate. Id.

The investigation further determined that Alsop is listed as an "employee" on employee rosters and has business cards which identify him as "Office Manager" for Investors Real Estate. Id. ¶ 8. The investigation also uncovered checks from Investors Real Estate's Chevy Chase bank account to Mr. Alsop, and American Express invoices that list Mr. Alsop as an account holder on the Investors Real Estate account. Id.

Information regarding the financial arrangement between Deal, Investors Real Estate and Alsop is critical to the investigation because it will allow the GPO OIG to help determine whether Alsop is receiving payment or other benefits from Deal or Investors Real Estate in violation of FECA. Id. ¶ 9. GPO OIG's request for the subpoenaed records arises out of an official, legitimate investigation. Id. ¶ 6. The GPO OIG is required to investigate such allegations in accordance with its statutory authority to investigate programs and operations of the GPO. Id.; see also Government Printing Office Inspector General Act, 44 U.S.C.A. 3901, et seq. and, the Inspector General Act of 1978, 5 U.S.C.A. app. 3.[2]

Specifically, the GPO Inspector General is authorized -- indeed, is required by law -- to conduct investigations of GPO programs in order to prevent and detect fraud, waste, and abuse. See 5

---

[2] The GPO Inspector General Act provides that "Sections 4, 5, 6 (other than subsection (a)(7) and (8) thereof), and 7 of the Inspector General Act of 1978 (Public Law 95–452; 5 App. U.S.C. 3) shall apply to the Inspector General of the [GPO] and the Office of such Inspector General...." 44 U.S.C. 3903(a).

3

U.S.C.A. app. 3, §§ 4(a)(1). Accordingly, the investigation into FECA fraud clearly falls within the purview of activity Congress has directed the GPO OIG to undertake. Through such investigations, the GPO OIG safeguards the integrity of GPO monies and its programs.

In carrying out these responsibilities, the Inspector General is authorized to subpoena the production of all information needed to perform such investigations. See 5 U.S.C.A. app. 3, § 6(a)(4).[3] The subpoenaed records sought in this matter are indispensable to the proper conduct and completion of the GPO OIG's investigation, and are essential to this legitimate law enforcement inquiry. Thus, the GPO OIG is entitled to full compliance with the subpoenas issued in connection with its official investigation.

## III. THE RIGHT TO FINANCIAL PRIVACY ACT

The RFPA provides specific procedures by which Federal authorities may obtain access to customer bank records in connection with a "legitimate law enforcement inquiry."[4] The RFPA establishes various mechanisms by which Federal access to financial records may be effectuated and generally prohibits a Federal agency from obtaining access unless the agency complies with specific requirements. See 12 U.S.C. § 3402. Among the permissible means of obtaining financial records is by way of administrative subpoena or summons. See 12 U.S.C. §3402(2).

The RFPA permits a Government authority to obtain financial records pursuant to an administrative subpoena if (1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry; (2) a copy of the subpoena has been served upon the customer or

---

[3] The Inspector General Act at 5 U.S.C. App. 3, § 6(a)(4) empowers the Inspector General, in this case, the GPO's Inspector General, to conduct investigations, to have access to all books, records and documents pertinent to authorized investigations, and to require by subpoena the production of documentary evidence necessary to implement the functions assigned by the Inspector General Act.

[4] The RFPA defines "law enforcement inquiry" as "a lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto." 12 U.S.C. §3401(8).

4

mailed to his last known address on or before the date on which the subpoena or summons was served on the financial institution together with a notice as required by the RFPA; and (3) ten days have expired from the date of service of the notice or fourteen days have expired from the date of mailing the notice to the customer and within such time period the customer has not filed a sworn statement and motion to quash in an appropriate court, or the customer challenge provisions of RFPA section 3410 have been complied with. See 12 U.S.C. §3405.

A customer may bring a challenge to an administrative subpoena under the RFPA by timely filing a challenge in accordance with the "customer challenge provisions." See 12 U.S.C. §3410 (cited, in part, supra, n.1). The customer may only sustain a challenge if the financial records sought are not relevant to a legitimate law enforcement inquiry or there has not been substantial compliance with the provisions of the RFPA. See 12 U.S.C. §3410(a)(2).

## IV. ARGUMENT

### A. The Motion Should Be Denied Because the Subpoenas Seek Records Relevant to a Legitimate Law Enforcement Inquiry.

A federal agency's administrative subpoena should be enforced if (1) the investigation and the issuance of the subpoena are within the authority of the agency, (b) the demands sought are reasonable related to the inquiry, and (c) the demands are not unduly burdensome or unreasonably broad. United States v. Morton Salt Co., 338 U.S. 632, 652 (1950); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208-209 (1946); Endicott v. Perkins, 317 U.S. 501, 509 (1943). "As a general rule, an administrative subpoena should be enforced 'if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'"

United States v. Florida Azalea Specialists, 19 F.3d 620, 623 (11th Cir. 1994), citing, Federal Election Commission v. Florida for Kennedy Committee, 681 F.2d 1281, 1284 (11th Cir. 1982).[5]

### 1. The Government's Law Enforcement Inquiry is Legitimate.

The GPO OIG must conduct, supervise and coordinate audits and investigations relating to programs and operations of the GPO and has the authority to subpoena records in the performance of these functions. See 5 U.S.C.A. app. 3, §§ 4(a)(1), 6(a)(4). The power of the GPO OIG to investigate is essentially the same as the grand jury's and is governed by several of the same limitations: the inquiry must not be arbitrary or in excess of statutory authority. See Oklahoma Press Publishing Co., 327 U.S. at 216. This does not mean however that the inquiry must be limited by forecasts of the probable results of the investigation. Id. An investigation is legitimate if it is one the agency is authorized to make and is not being conducted solely for an improper purpose such as political harassment or intimidation or is otherwise in bad faith. Pennington v. Donovan, 574 F. Supp. 708, 709 (S.D. Tex. 1983).

Whether there is cause to believe that a violation has been or is about to be committed is irrelevant. EEOC v. Chrysler Corp., 567 F.2d 754, 755 (8th Cir. 1977). The agency can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. Morton Salt Co., 338 U.S. at 642-43; United States v. Tyson's Poultry, Inc., 216 F. Supp. 53, 64, 67 (W.D. Ark. 1963) (USDA administrative subpoena enforced to determine whether violation has occurred).

---

[5]Normally, the court's role in the enforcement proceeding is summary in nature and is limited to an examination into whether the information sought is relevant to a lawful purpose of the agency. See EEOC v. Kloster Cruise Ltd., 939 F.2d 920, 922 (11th Cir. 1991).

The types of materials subject to the Inspector General's subpoena authority are broad. The Inspector General is authorized to subpoena such materials as he deems necessary to carry out his duties and responsibilities. S. Rep. No. 95-1071, 95th Cong., 2d Sess. 33, reprinted in 1978 U.S. Code Cong. & Ad. News 2708; see also United States v. Educational Dev. Network Corp., 884 F.2d 737, 740-44 (3rd Cir. 1989), cert. denied, 494 U.S. 1078 (1990). The use of the phrase "necessary in the performance of the functions assigned by this Act," is in no way intended to limit the Inspector General's subpoena power. United States v. Westinghouse Electric Corp., 788 F.2d 164, 170 (3rd Cir. 1986). Congress intended that the courts accept the Inspector General's determination of what information is needed, so long as the information is relevant to an OIG function. Id. at 171.

As noted above, this investigation was opened to determine whether Mr. Alsop was receiving compensation or benefits from Mr. Deal or Investors Real Estate in violation of FECA. Serious questions have been raised concerning the nature of Mr. Alsop's business and financial relationship with Mr. Deal and Investors Real Estate. The investigation of these allegations falls within OIG's statutory authority to investigate programs and operations of the GPO.

### 2. The Subpoenaed Records are Relevant to the Government's Legitimate Law Enforcement Inquiry

Courts have limited authority with respect to reviewing the relevance of an administrative subpoena. During the course of an investigation, "the Court is limited in its inquiry to whether or not there is a reasonable and legitimate belief that the records sought are relevant to the . . . inquiry." Ling v. United States Dep't of Justice, 507 F. Supp. 1, 2 (S.D. Fla. 1979); see also Resolution Trust Corp. v. American Casualty Co., 787 F. Supp. 5, 6-7 (D.D.C. 1992). Further, the District of Columbia Circuit, evaluating administrative subpoenas issued by the Resolution Trust Corporation, stated, "we defer to the agency's appraisal of relevancy, which 'must be accepted so long as it is not

7

obviously wrong.'" Resolution Trust Corp. v. Walde, 18 F.3d 943, 946 (D.C. Cir. 1994), quoting Fed. Trade Comm'n v. Invention Submission Corp., 965 F.2d 1086, 1089 (D.C. Cir. 1992). So long as the material requested "touches a matter under investigation," there exists a reasonable and legitimate belief that the records sought are relevant. Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank. Bd., 878 F.2d 875, 882 (5th Cir. 1989), quoting Equal Employment Opportunity Comm'n v. Elrod, 674 F.2d 601, 613 (7th Cir. 1982) (citations omitted).

Moreover, the Supreme Court has stated that production of evidence will be ordered unless the documents are "plainly incompetent or irrelevant to any lawful purpose" of the agency. Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509 (1943); accord United States v. Aero Mayflower Transit Co., Inc., 831 F.2d 1142, 1145 (D.C. Cir. 1987); Westinghouse Electric Corp., 788 F.2d at 170. A subpoena for records that may simply lead to other evidence which, in turn, will establish violations of law, will be enforced. Pennington, 574 F. Supp. at 709.

The Inspector General's own determination of the scope of his investigative authority is entitled to great weight by the courts:

> In view of the well-established principle of deference to agency discretion in issuing subpoenas and in the absence of contrary legislative history, we believe Congress intended that the courts accept the Inspector General's determination of what information is "necessary to carry out the functions assigned by this Act" so long as the information is relevant to an Inspector General function.

Westinghouse Electric Corp., 788 F.2d at 171; see also Oklahoma Press Publishing Co. v. Walling, 327 U.S. at 214 (agencies generally are granted broad deference in determining the scope of their investigative authority).

8

Additionally, courts have adopted a "strictly limited role" when they review administrative subpoenas pursuant to the RFPA. See Sandsend Fin. Consultants, Ltd. 878 F.2d at 879. Furthermore, the RFPA was crafted cautiously to limit a customer's right to challenge an administrative subpoena:

> [The RFPA] carefully limits the kinds of customers to whom it applies, §§ 3401(4), (5), and the types of records they may seek to protect, § 3401(2). A customer's ability to challenge a subpoena is cabined by strict procedural requirements. For example, he must assert his claim within a short period of time, § 3410(a), and cannot appeal an adverse determination until the Government has completed its investigation, § 3410(d). Perhaps most importantly, the statute is drafted in a fashion that minimizes the risk that customers' objections will delay or frustrate agency investigations.

S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 745-46 (1984).

Here, the Movant has not presented "a factual basis for concluding that there is no reason to believe the financial records [which] are being sought contain information relevant" to GPO OIG's investigation, which the House Report accompanying the RFPA stated that the customer's affidavit must contain. See Hancock v. Marshall, 86 F.R.D. 209, 211 (D.D.C. 1980), citing H.R. Rep. No. 1383, 95th Cong., 2d Sess. 53 (1978), reprinted in U.S. Code Cong. & Admin. News 1978, pp. 9273, 9325) (emphasis added). Rather, the Movant merely makes conclusory statements in their Motion that the documents requested are not relevant to a legitimate law enforcement inquiry, and that there is no nexus between the criminal investigation of Mr. Alsop and his alleged workers' compensation fraud.

The GPO OIG has determined that the subpoenaed records are needed to determine whether Mr. Alsop is being compensated or is otherwise receiving benefits from Mr. Deal or Investors Real Estate in contravention of FECA. Special Agent Scott's declaration supports the determination that the subpoenaed records are relevant to the legitimate, official OIG investigation.

### 3. The Scope of the Subpoenas is Neither Too Indefinite Nor Unreasonably Burdensome.

The subpoenas at issue contain requests for specific financial records that may not be in the possession of the Movant. Accordingly, the Movant's claim that the request is moot or was otherwise available upon seizure of the computer records is without merit. Movant's Motion ¶¶ 5, 6. Obtaining copies of the records directly from the American Express and Chevy Chase will ensure accuracy and completeness of the records and will not burden the Movant. Assuming, arguendo, that Movant claims any undue burden, the request is neither indefinite nor unreasonably burdensome. "[S]ome burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." FTC v. Texaco, 555 F.2d 862, 882 (D.C. Cir. 1977) (en banc), cert. denied, 431 U.S. 974 (1977); see also United States v. Aero-Mayflower Transit Co., 646 F. Supp. 1467, 1472 (D.D.C. 1986) ("burden by itself does not deny enforcement"). The limited document requests made in the subpoenas are clear and limited in scope. Thus, the requests are not unduly burdensome. Moreover, the Movant need not take any action in order to comply with the subpoena requests – in such case there can be no burden placed upon any of the Movant to comply.

### 4. The OIG Substantially Complied With The RFPA's Customer Notice Provisions.

The RFPA requires that, before obtaining customer records pursuant to an administrative subpoena, the Government must forward a copy of the subpoena to the customer and provide the customer with reasonably specific notice of the nature of the law enforcement inquiry. See 12 U.S.C. § 3405(2). The RFPA requires only "substantial compliance." See 12 U.S.C. § 3410(a)(2). This standard is intended to ensure that minor technical violations do not provide a basis for denying access to the records sought. H.R. Rep. No. 1383, 95th Cong., 2d Sess. 224 (1978) (additional views of Mr. LaFalce), reprinted in 1978 U.S. Code Cong. & Ad. News 9354.

In the present case, copies of the subpoenas, along with Customer Notices, copies of correspondence with the Banks, Statement(s) of Customer Rights Under the Right to Financial Privacy Act of 1978, Customers Sworn Statement for Filing a Challenge in the United States District Court, Customers Motion to Challenge Governments Access to Financial Records, Instructions for Completing and Filing the Enclosed Motion and Sworn Statement and Certificates of Service, were sent via certified mail to the Movant at his business address. Scott Decl. ¶ 5. The Notice advised the Movants of an official investigation being performed pursuant to the GPO Inspector General Act.

The notice was adequate to meet the requirements of the RFPA and has not been challenged by Movant. Moreover, the notice met the specificity required under the RFPA. See Olsen v. United States Dep't. of Housing and Urban Development, Civ. A. No. 95-3389 and 95-3390, 1995 WL 686762, *2 (E.D. La. Nov. 16, 1995)("The RFPA does not require [the government] to 'disclose the results of a law enforcement inquiry prior to obtaining evidence in such an inquiry.'").

## V. CONCLUSION

The Movant's customer challenge pursuant to 12 U.S.C. § 3410(a) should be denied and dismissed. The OIG must have access to the records requested by the subpoenas to complete a legitimate law enforcement investigation. The records requested are relevant and the request is not unduly burdensome or overly broad. Accordingly, the GPO respectfully requests that this Court deny the relief requested by the Movant and issue an Order enforcing the subpoenas.

Date:                                              Respectfully Submitted,

*Kenneth L. Wainstein (KW)*
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

*R. Craig Lawrence (CHM)*
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

Of Counsel:
J. Anthony Ogden
Assistant Inspector General/
Counsel to the Inspector General
U.S. Government Printing Office

*Laurie Weinstein (W)*
LAURIE WEINSTEIN, DC Bar #389511
Assistant United States Attorney
U.S. Attorney's Office for the District of
Columbia, Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C. 20530
Ph: (202) 307-0492

12